IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CA No.: 1:20-cv-00134-LPA

| | | |
|---|---|---|
| SIOBHAN JAMES, on behalf of herself and all others similarly situated, | ) ) | |
| | ) | |
| *Plaintiff*, | ) ) | **PLAINTIFF'S FIRST AMENDED** |
| v. | ) ) | **COLLECTIVE AND CLASS ACTION** **COMPLAINT** |
| RPS HOLDINGS, LLC, d/b/a CAPITAL CABARET, | ) ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

COMES NOW, Siobhan James ("Named Plaintiff"), on behalf of herself and all others similarly situated, opt-in Plaintiffs and Rule 23 class members (collectively "Plaintiffs"), by and through undersigned counsel, hereby sets forth this collective/class action against Defendant RPS Holdings, LLC, d/b/a Capital Cabaret, and alleges as follows:

## PRELIMINARY STATEMENT

1.     This action is brought individually and as a collective action seeking unpaid minimum wages, unpaid overtime compensation, back-pay, restitution, liquidated damages, reasonable attorney's fees and costs, and all related penalties and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.  Defendant had a systemic company-wide policy, pattern, or practice of misclassifying employees as "independent contractors."

2.     This action is also brought individually and as a class action for payment of all earned, accrued, and unpaid straight and overtime promised wages, and for other relief as appropriate, under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.6 *et seq*.

3.     Defendant's pay practices and policies were in direct violation of the FLSA and the NCWHA. Accordingly, Plaintiffs seek unpaid straight and overtime compensation, in addition to liquidated damages, attorneys' fees and costs, prejudgment interest, and other damages permitted by applicable law.

4.     As a result of this policy, pattern, or practice of misclassification, Defendant is legally responsible and now liable for failing to pay Plaintiffs and other similarly situated individuals required wages under the Federal Fair Labor Standards Act ("FLSA") and the North Carolina Wage & Hour Act ("NCWHA").

5.     Named Plaintiff brings this action as a class and collective action against Defendant seeking back-pay, restitution, liquidated damages, reasonable attorney's fees and costs, and all other relief that the Court deems just, reasonable and equitable in the circumstances.

6.     Plaintiff James also brings this action individually for assault, battery, intentional and negligent infliction of emotional distress, negligent employment, supervision and retention, and wrongful termination. As alleged with greater specificity below, Defendant subjected Plaintiff James to verbal harassment and physical abuse, which created a hostile work environment, leading to Plaintiff James being placed in a life-threatening situation. When Plaintiff James complained about this situation and tried to

2

defend herself, Defendant took an unlawful adverse employment action against Plaintiff James. Accordingly, Plaintiff James seeks all available relief for these claims, including, but not limited to, back pay, front pay, past pecuniary losses, prejudgment interest, compensatory damages, punitive damages, attorney's fees and costs, and all other relief permitted by applicable law.

## JURISDICTION AND VENUE

7.     This Court has federal question jurisdiction pursuant to 29 U.S.C. § 1331, based upon the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*.

8.     The United States District Court for the Middle District of North Carolina has personal jurisdiction because Defendant's principal place of business is located in North Carolina and Defendant conducts business in North Carolina.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c). Plaintiff James is a resident of Greensboro, North Carolina, and some of her claims arose in the Middle District of North Carolina. Additionally, Defendant regularly conducts business within this judicial district.

10.     The claims for violations of the NCWHA are based upon the statutory law of the State of North Carolina.

11.     Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims under the NCWHA; negligent hiring, supervision, and retention; assault; battery; intentional and negligent infliction of emotional distress; and wrongful termination, because those state law claims arise out of the same nucleus of operative fact as the FLSA claims.

12.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

13.     Upon information and belief, during the time period relevant to this action, Defendant was an employer that employed Named and Putative Plaintiffs, pursuant to the FLSA and NCWHA, in that Defendant, or its agents, held or implemented the power, *inter alia*, to control the work performance of Named and Putative Plaintiffs, and Defendant received the benefit of Named and Putative Plaintiffs' labor.

## PARTIES

14.     Named Plaintiff is an adult resident of State of North Carolina, residing at 6617 Nora Drive, Greensboro, North Carolina.   She worked for Defendant from approximately July 2016, until January 2018.

15.     Plaintiff was employed by Defendant as an exotic dancer at Defendant's Capital Cabaret Gentlemen's Club in Morrisville, North Carolina.

16.     The FLSA collective action Opt-In and Putative Plaintiffs consist of individuals who did work or have worked for Defendant at Capital Cabaret who were classified as independent contractors, and who were suffered or permitted to work by Defendant, at any time within the three (3) year period prior to joining this lawsuit under 29 U.S.C. § 216(b).

17.     The NCWHA Rule 23 proposed class action members consist of individuals who did work or have worked for Defendant at Capital Cabaret who were classified as independent contractors, and who were suffered or permitted to work by Defendant, at any time within the two (2) year period prior to the filing of this lawsuit.

4

18.     RPS Holdings, LLC, d/b/a Capital Cabaret, is a limited liability company formed in North Carolina and operates as a gentlemen's club featuring female exotic dancers. Defendant has been in business since 2005 and is located at 6713 Mt. Herman Road, Morrisville, North Carolina 27560.

## COVERAGE

19.     At all times material to this action, Defendant has acted, directly or indirectly, in the interest of an employer or joint employer with respect to Plaintiffs.

20.     At all times material to this action, Defendant was an employer within the defined scope of the FLSA, 29 U.S.C. § 203(d).

21.     At all times material to this action, Plaintiffs were individual employees within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

22.     At all times material to this action, Defendant was an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

## FACTUAL ALLEGATIONS

23.     At all relevant times, Defendant was in the business of operating a gentlemen's club featuring female exotic dancers and at all times it was the job duty of Plaintiffs to perform as a female exotic dancer for the club's customers.

5

24. Plaintiffs were employed by Defendant as exotic dancers at Defendant's Capital Cabaret Gentlemen's Club in Morrisville, North Carolina.

25. During the period of Plaintiffs' employment, the number of shifts Plaintiffs worked varied from week to week, ranging from 5-6 shifts or more.

26. Plaintiff James typically worked Tuesday through Saturday but would work on Sunday at least once per month.

27. Plaintiff James would come in Tuesday through Thursday at 7:00 or 8:00 pm and work until 2:00 am or later. Fridays and Saturdays, she would come in at 7:00 or 8:00pm and work until 4:00am or later. On Sundays, James would come in at 7:00 or 8:00 pm and work until 2:00 am or later.

28. Defendant required Plaintiffs to work at least seven (7) hours per shift.

29. During the period of Plaintiffs' employment, the exact number of hours Plaintiffs worked varied from week to week. Workweek hours worked varied from as low as 35 hours to as high as 48 hours per week. On average, Plaintiffs worked 42 hours per week.

30. Plaintiffs were required to pay a "house fee" of $35 per shift, which would increase $15 per hour that Plaintiffs were late for their shift. If Plaintiffs did not pay the house fee, they were not allowed to work their shift.

31. Plaintiffs were expected, as a condition of their employment, to "tip out" several of Defendant's employees at the end of each shift, including: managers, bartenders, DJs, House Moms, valets, showgirls and bouncers.

32. These "tip-outs" consisted of at least 10% of Plaintiffs' total floor and table

6

dance tips to each of the above listed employees working during each of Plaintiffs' shifts, with the exception that showgirls would typically get a $5.00 "tip-out" each.

33. Plaintiffs were told that it was in their best interest to "tip-out" managers at the higher rate of 15%. Additionally, it was expected of Plaintiffs to "tip-out" the DJ multiple times per shift, including payments of $30 or more in addition to the 10% "tip-out" at the end of each shift.

34. Plaintiffs were told that if they did not "tip-out" these other employees at the end of each shift, then Plaintiffs would suffer adverse employment actions, including receiving fewer opportunities to interact with tipping customers, substandard floor and stage placement, and/or no protection from abusive customers.

35. On average, Plaintiffs would "tip-out" between $75-$150 of their tips per shift or more.

36. If Plaintiffs left before the scheduled end time of their shift, they were required to pay Defendant between $75 to $125 as a penalty.

37. Defendant has possession, custody, and control of time and/or sign in and out records and "house fee" payment records for Plaintiffs.

38. Agents on behalf of Defendant had actual knowledge of all hours Plaintiffs worked each shift, as Defendant required Plaintiffs to "check in" upon arrival with the employee working the "podium," and then go to the House Mom at the end of their shift to be "cleared" to leave. Actual knowledge of hours worked is also provided to shift-managers monitoring and supervising Plaintiff's work duties.

39. At no time during Plaintiffs' period of employment did Defendant ever pay

7

Plaintiffs any wages for hours that Plaintiffs worked each week.

40.     Defendant totally failed to pay wages or any kind of compensation to Plaintiffs for work duties performed.

## MISCLASSIFICATION AS INDEPENDENT CONTRACTORS

41.     Defendant misclassified Plaintiffs as independent contractors when each individual should have been classified under the FLSA and NCWHA as an employee.

42.     Defendant controlled all aspects of the job duties Plaintiffs performed inside the club through employment rules and workplace policies.

43.     Defendant controlled the method by which Plaintiffs could earn money at the club by enforcing a dress code, establishing dance orders, setting customer prices on private and semi-private exotic dances, and setting private and semi-private dance specials and promotions for customers. At no time was a dancer's pay tied to the income or profit that Defendant received, and Plaintiffs never made a financial investment in Defendant or any equipment belonging to Defendant.

44.     Defendant required Plaintiffs to perform private and semi-private dances under the pricing guidelines, policies, procedures, and promotions set exclusively by Defendant.

45.     Defendant hired Plaintiffs and had the ability to discipline, fine, fire, and adjust each individual's work schedule.

46.     Defendant, through supervisors and managers, supervised the duties of Plaintiffs to make sure each individual's job performance met Defendant's standards.

47.     Defendant conducted initial interviews and vetting procedures for Plaintiffs

8

and, at the club's sole discretion, the club's management and/or ownership could deny Plaintiffs access or ability to dance and/or work at the club.

48.     Defendant had the right to suspend or send Plaintiffs home and away from the club if Plaintiffs or any other violated rules or policies or if the club's ownership or management, at its discretion, did not want Plaintiffs to work at the club.

49.     Plaintiffs were not required to have or possess any requisite certification, education, or specialized training as a condition of employment with Defendant, other than three "etiquette" on-boarding trainings that Defendant required all new dancers to take at the start of their employment. Defendant conducted all of these trainings.

50.     In addition to failing to pay Plaintiffs wages for hours worked, Defendant required Plaintiffs to pay the club or its ownership or management a house fee or kickback of $35.00 or more for each shift Plaintiffs worked.

51.     Without justification, Defendant regularly and customarily kept and/or assigned to management tips and gratuities Plaintiffs received from customers.

52.     Upon information and belief, Defendant and its ownership had actual or constructive knowledge the club misclassified Plaintiffs as independent contractors, failed to pay them wages as required under the FLSA and NCWHA, unlawfully withheld or assigned tips Plaintiffs received from customers, and unlawfully charged Plaintiffs kickbacks, fines, and surcharges during their employment period.

53.     Defendant has willfully violated the statutory rights of Plaintiffs under both the FLSA and the NCWHA, resulting in damages to Plaintiffs in the form of unpaid straight-time wages and unpaid overtime wages, in addition to liquidated damages,

9

attorneys' fees and costs, prejudgment interest, and other damages permitted by applicable law.

## FLSA COLLECTIVE ACTION ALLEGATIONS

54.　　Named Plaintiff brings the First and Second Counts of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of herself and all similarly situated employees.

55.　　Similarly situated employees, for purposes of the FLSA collective action claims, include individuals who have worked for Defendant at any time within the three (3) year period prior to joining this lawsuit under 29 U.S.C. § 216(b), who signed an agreement to provide exotic dancing services to Defendant, and performed such services, pursuant to that agreement, as independent contractors, and who have not been paid minimum wage and overtime compensation.

56.　　Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiffs.

57.　　Named Plaintiff requests that she be permitted to serve as representative of those who consent to participate in this action, and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

58.　　Pursuant to 29 U.S.C. § 216(b), attached to and filed with the instant Complaint as Exhibit A, is a Consent to File Suit as Plaintiff executed by Named Plaintiff.

## NCWHA CLASS ACTION ALLEGATIONS

59.　　Named Plaintiff brings the Third Count of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf

of herself and all similarly situated employees, for relief to redress and remedy Defendant's violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, et seq.

60. Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiffs.

61. <u>The Proposed Class</u>: All individuals who signed an agreement to provide exotic dancing services to Defendant, and performed such services, pursuant to that agreement, as independent contractors in North Carolina, who were not paid their earned, accrued, and promised wages, and unlawful deductions, including, but not limited to, any straight and overtime wages consistent with N.C. Gen. Stat. 95-25.6 (requiring that all earned and accrued wages be paid on an employee's regular pay date) and N.C. Gen. Stat. 95-25.13 (requiring the notification of wages and pay date in writing or through postings, such as those relating to federal and state law during the two (2) years preceding the filing of this action.

62. <u>Numerosity</u>: The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Named Plaintiff at this time, upon information and belief, the class comprises at least three hundred (300) individuals.

63. <u>Common Questions Predominate</u>: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all Plaintiffs have been harmed by

11

Defendant's misclassification of employees as independent contractors. The common questions of law and fact include, but are not limited to, the following:

  a. Whether all exotic dancers are "employees" for purposes of the North Carolina wage laws;

  b. Whether Defendant failed to pay Plaintiffs all of their earned and accrued wages, including, but not limited to, any promised straight or overtime wages, on their regular pay date, pursuant to N.C. Gen. Stat. §§ 95.25.6, for failure to comply with the promised payment of through mandatory notifications of the FLSA and NCWHA posters as required by 95-25.13;

  c. Whether Defendant compensated Plaintiffs for all of their hours worked;

  d. Whether Defendant lawfully deducted from Plaintiffs' wages, in accordance with N.C. Gen. Stat. § 95-25.8 and 13 N.C. Admin. Code 12 § .0305(g).

64. <u>Typicality</u>: The claims of Named Plaintiff are typical of the claims of each proposed class member, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendant, as alleged herein, of failing to pay employees all of their earned and accrued wages pursuant to N.C. Gen. Stat. § 95-25.6. Defendant's compensation policies and practices affected all putative class members similarly. Named Plaintiff and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

12

65. <u>Adequacy of Representation</u>: Named Plaintiff is able to fairly and adequately protect the interests of all members of the proposed class, and there are no known conflicts of interest between Named Plaintiff and members of the proposed class. Named Plaintiff has retained counsel who is experienced and competent in both wage and hour law and complex class action litigation.

66. <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them.

67. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendant, and resulting in the impairment of class

13

members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

68. <u>Public Policy Considerations</u>: Defendant violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the Complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

## NEGLIGENT SUPERVISION, ASSAULT, BATTERY, INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, AND RETALIATION FACTUAL ALLEGATIONS

69. In approximately January 2018, Plaintiff James' manager at Capital Cabaret, Tim Koller, verbally and physically accosted Plaintiff James while she was working.

70. While Plaintiff James was surrounded by clients whom she was dancing for, Tim approached Plaintiff James in a threatening manner and yelled at her that she was a "stupid black bitch" and ordered her to immediately leave the club.

71. Plaintiff James then attempted to gather her possessions and talk to the "House Mom" upstairs about Tim's actions, but before she could reach the stairs, Tim suddenly grabbed Plaintiff James and pulled her back.

72. Plaintiff James attempted to grab a door handle to prevent from falling, but

14

Tim then used his brute strength to slam Plaintiff James on the ground, where Tim then held her down by her neck.

73.     Plaintiff James, terrified by Tim's actions and gasping for air, yelled out for someone to call 911.

74.     Tim then physically picked up Plaintiff James and threw her out of the club and into the parking lot.

75.     At this time, Plaintiff James was essentially naked, Ms. James then rushed to put on a dress that she was holding to cover herself up.

76.     Despite Plaintiff James' attempts to gather her possessions and talk to the "House Mom," Tim prevented her from doing so by physically restraining her, slamming her to the ground, holding her down by her neck, and picking her up and throwing her out of the club.

77.     Tim then ordered that she leave the premises, but Plaintiff James requested to wait for the police to arrive before she left.

78.     Upon hearing this, Tim again became enraged, grabbed Plaintiff James by the neck, and slammed her on the pavement.

79.     Choking and gasping for air, Plaintiff James attempted to defend herself and break free by grabbing her shoes and hitting Tim.

80.     After eventually breaking free, Tim then warned Plaintiff James that she "better not come back around here" and "I better not see you again."

81.     Plaintiff James understood Tim's remarks to mean that he was terminating her employment relationship with Defendant.

15

82. Throughout Plaintiff James' employment with Defendant, she was aware of numerous other incidents of verbal and physical abuse by Tim to other female employees.

83. Several employees, including Plaintiff James, complained about Tim's behavior and violent tendencies to Defendant, including the "House Mom."

84. Defendant ignored the complaints and took no action to correct the situation or Tim's behavior.

85. After reporting the incident to Defendant, Plaintiff James was informed that the security cameras in the club were not working at the time of the incident and nothing could be done.

86. Plaintiff James left the scene bruised, battered, and in a state of shock. She wanted to press charges against Tim but was afraid that Tim might find her and hurt her again if she did so.

87. The day after the incident, Plaintiff James went to the hospital where she was treated for the physical injuries resulting from Tim's attack. She is still paying for this treatment in monthly installments.

88. Plaintiff James remains traumatized by Tim's attack, and suffered fear and emotional distress resulting from the harassment and threats and from the assault, with symptoms including, but not limited to, headaches, insomnia, nightmares, depression, and anxiety.

## COUNT ONE
**Violation of the Fair Labor Standards Act
29 U.S.C. §§ 203(m), 206
(Unlawful Tip Deductions and Failure to Pay Minimum Wage)
(On Behalf of Named, Opt-In, and Putative Plaintiffs)**

89. Named Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

90. Pursuant to the FLSA, 29 U.S.C. § 206, employers must pay non-exempt employees a minimum wage of $7.25 per hour for all hours worked.

91. The FLSA, 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59, provides an exception to the aforementioned minimum wage rate of $7.25 per hour, allowing certain employers to take a "tip credit," and count tips received by eligible employees toward the employer's minimum wage obligations, with a maximum credit claimed for each employee of $5.12 per hour.

92. In order to lawfully utilize the tip credit allowance, the FLSA, 29 U.S.C. § 203(m), requires in part that "all tips received by [each] employee [be] retained by the employee."

93. The FLSA prohibits a taking or assignment by Defendant or its management or non-customarily tipped employees of tips or gratuities received by tipped employees from customers.

94. As set forth above, Defendant failed to pay Named Plaintiff and other similarly situated individuals minimum wage compensation as required by the FLSA.

95. As set forth above, Defendant unlawfully kept and/or assigned tips and gratuities Plaintiff and other similarly situated individuals received from customers.

96. Without the benefits of the tip credit provision, Defendant must pay Plaintiffs an hourly rate the statutory minimum wage of $7.25 per hour for all hours worked, without any credit for the tips received by Plaintiffs.

17

97. As set forth above, Defendant willfully failed to pay Plaintiffs the statutory minimum wage rate by misclassifying them as independent contractors.

98. The foregoing conduct, as alleged above, constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a), which permits the recovery of unpaid minimum wages for up to three (3) years, rather than two (2) years.

99. Similarly, for the reasons stated above, Defendant cannot affirmatively defend its failure to pay the appropriate minimum wage rate as having been done in good faith, entitling Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b).

100. As such, Plaintiffs seek to recover from Defendant the following damages:

    a. Minimum wages due;

    b. Liquidated damages in an equal amount;

    c. Reasonable attorneys' fees and costs; and

    d. All other legal and equitable relief as the Court deems just and proper.

**<u>COUNT TWO</u>**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. § 207**
**(Failure to Pay Proper Overtime Wage)**
**(On Behalf of Named, Opt-In, and Putative Plaintiffs)**

101. Named Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

102. Pursuant to the FLSA, 29 U.S.C. § 207, an employer must pay non-exempt employees at one and one-half (1.5) their regular hourly rate for all hours worked over forty (40) in a single workweek.

18

103. Plaintiffs regularly worked between thirty-five (35) and forty-eight (48) hours per week.

104. Without the benefit of the tip credit provision, for the reasons stated above, Defendant must pay Plaintiffs for all overtime hours worked at a rate of one and one-half (1.5) their appropriate regular hourly wage of $7.25 per hour, equal to $10.88 per hour for all hours worked over forty (40) each week.

105. Defendant willfully failed to pay Plaintiffs the proper amount for all hours worked over forty (40) in a single workweek for the reasons stated above.

106. The foregoing conduct, as alleged above, constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a), which permits the recovery of unpaid overtime wages for up to three (3) years, rather than two (2) years.

107. Similarly, for the reasons stated above, Defendant cannot affirmatively defend their failure to pay appropriate overtime wages as having been done in good faith, entitling Plaintiffs to liquidated damages in an amount equal to the amount of unpaid overtime wages under 29 U.S.C. § 216(b).

108. As such, Plaintiffs seek to recover from Defendant the following damages:

   e. Overtime wages due;

   f. Liquidated damages in an equal amount;

   g. Reasonable attorneys' fees and costs; and

   h. All other legal and equitable relief as the Court deems just and proper.

**COUNT THREE**
**Violation of the North Carolina Wage and Hour Act**
**N.C. Gen. Stat. §§ 95-25.6, 95-25.8, 95-25.13**

19

**(Invalid or Unauthorized Deductions from Tips and/or Promised Straight and Overtime Wages)**
**(On Behalf of Named, Opt-In, and Putative Plaintiffs)**

109.     Named Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

110.    At all relevant times, Defendant have employed, and/or continue to employ Plaintiffs within the meaning of the NCWHA.

111.     Defendant employed Plaintiffs within the State of North Carolina.

112.     Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.8, and the accompanying regulation, 13 N.C. Admin. Code 12 § .0305(g), "If an employer withholds or diverts wages for purposes not permitted by law, the employer shall be in violation of G.S. 95-25.6 . . . even if the employee authorizes the withholding in writing pursuant to G.S. 95-25.8(a), because that authorization is invalid."

113.     The NCWHA further prohibits a taking or assignment by Defendant or its management or non-customarily tipped employees of tips or gratuities received by tipped employees from customers.

114.     Regardless of whether Defendant may have received authorization otherwise in compliance with N.C. Gen. Stat. § 95-25.8(a), Defendant withheld Plaintiffs' wages "for purposes not permitted by law," as provided above, and are therefore liable for these unlawful withholdings.

115.     Defendant unlawfully withheld and diverted funds from the compensation earned by Plaintiffs for an improper purpose, to offset Defendant's business expenses, including, but not limited to, the cost of employing other workers, in direct violation of

20

the NCWHA.

116.     Additionally, pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.8(a)(3), an employer may only withhold or divert any portion of an employee's wages, "when the amount of the proposed deduction is not known and agreed upon in advance," after meeting several requirements, including, but not limited to: (1) receiving written authorization from each employee; (2) providing the reason for each deduction; (3) providing advance written notice of the actual amount to be deducted; and (4) providing written notice to employees of their right to withdraw authorization.

117.     Beyond withholding Plaintiffs' wages "for purposes not permitted by law," Defendant violated N.C. Gen. Stat. § 95-25.8(a)(3) by not receiving sufficient authorization from Plaintiffs, including, but not limited to, failing to provide advance written notice of the actual amount to be deducted, or failure to provide written notice of employees' right to withdraw authorization.

118.     As a result of Defendant's unlawful policies and practices, Plaintiffs have been deprived of compensation due and owing.

119.     Consistent with the above, Defendant failed to pay Plaintiffs all owed promised and earned wages, in violation of N.C. Gen. Stat. § 95-25.6.

120.     For the reasons stated above, Defendant cannot affirmatively defend its NCWHA violations as having been done in good faith, entitling Plaintiffs to liquidated damages in an amount equal to the amount of unlawful deductions, straight and promised overtime wages consistent with § 95-25.6 and § 95-25.13, notification of payment of wages as required by federal and state law postings.  All such damages are recoverable

21

under N.C. Gen. Stat. § 95-25.22(a1).

121.    As such, Plaintiffs seek to recover from Defendant the following damages:

    i.  Misappropriated and/or unlawfully deducted wages;

    j.  Unpaid promised straight and overtime wages through posting

       requirements;

    k.  Liquidated damages in an equal amount;

    l.  Reasonable attorneys' fees and costs;

    m. Prejudgment interest; and

    n. All other legal and equitable relief as the Court deems just and proper.

<div align="center">

**<u>COUNT FOUR</u>**
**Negligent Employment, Supervision, and Retention**
**North Carolina Common Law**
**Brought by Plaintiff James**

</div>

122.    Plaintiff James incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

123.    Defendant owed a duty to Plaintiff James to exercise reasonable care in its hiring, supervision, and retention of its employees, in order to protect Plaintiff from the wrongful conduct of their employees, including, but not limited to, Tim Koller.

124.    Tim was an incompetent employee in that Defendant's employment and retention of him was dangerous to fellow employees, especially given his position of power over them as a manager.

125.    Defendant knew and/or had a reason to know of Tim's incompetency, in that Plaintiff James and other employees repeatedly complained to Defendant's management,

<div align="center">22</div>

including the "House Mom," of Tim's harassing, threatening, and violent behavior.

126.    Defendant violated its duty of care in hiring, supervising, and retaining Tim, who subjected Plaintiff James to the aforementioned abuses, by failing to properly train and supervise him regarding policies prohibiting discrimination and harassment, failing to enforce or implement any such policies, failing to supervise its employees to ensure no such conduct would occur, failing to take action after being alerted to such conduct, and retaining Tim, despite his unlawful acts and improprieties.

127.    As a proximate result of the negligence of Defendant, Tim committed a multitude of tortious acts against Plaintiff James, as alleged herein, including, but not limited to, physical assault and battery, threats of imminent bodily harm or death, intentional and/or negligent infliction of emotional distress, and creation of a hostile working environment through constant beratement and threats, racial harassment, and explicit and obscene language.

128.    As a proximate result of the negligence of Defendant, Plaintiff James has been injured and suffered damages, including lost income and benefits, loss of reputation, emotional distress and mental anguish, humiliation, inconvenience, and loss of enjoyment of life.  Accordingly, Plaintiff James is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).

129.    The actions of Defendant constituted gross negligence and reckless indifference of the rights of Plaintiff James, entitling Plaintiff James to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.

**COUNT FIVE**

23

130.    Plaintiff James incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

131.    Tim, an employee of Defendant, intentionally placed Plaintiff James in reasonable fear of imminent bodily harm, and she did, in fact, fear bodily harm, when Tim chased Plaintiff James around the workplace and repeatedly physically abused her, including when Tim slammed Plaintiff James several times on the floor of the workplace and pavement of the parking lot, when Tim held Plaintiff James down on the ground by her neck rendering her unable to breath and gasping for air, and when Tim repeatedly threatened Plaintiff James through physical violence and verbal abuse, including telling Plaintiff James that she was a "stupid black bitch."

132.    Plaintiff James' fear and apprehension was a product of Tim's intentional actions.

133.    Tim committed these acts while serving as an employee of Defendant. Plaintiff James and other employees reported Tim's behavior to Defendant, which took no action to prevent this behavior.  Accordingly, Defendant ratified Tim's conduct.

134.    Plaintiff James suffered fear and emotional distress as a result of these actions, and is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).

135.    Defendant's acts constituted willful, wanton, and malicious conduct, entitling Plaintiff James to punitive damages pursuant to Chapter 1D of the North Carolina

24

General Statutes.

<div align="center">

**COUNT SIX**
**Battery**
**North Carolina Common Law**
**Brought by Plaintiff James**

</div>

136.    Plaintiff James incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

137.    Tim, an employee of Defendant, intentionally and offensively touched Plaintiff James, without her permission, when he slammed Plaintiff James into the floor of the workplace and parking lot and held Plaintiff James down on the floor by her neck, causing her to choke and gasp for air.

138.    Tim committed this act while serving as an employee of Defendant. Plaintiff James and other employees reported Tim's behavior to Defendant, which took no action to prevent this behavior. Accordingly, Defendant ratified Tim's conduct.

139.    Plaintiff James suffered fear and emotional distress as a result of these actions, and is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).

140.    Defendant's acts constituted willful, wanton, and malicious conduct, entitling Plaintiff James to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.

<div align="center">

**COUNT SEVEN**
**Intentional Infliction of Emotional Distress**
**North Carolina Common Law**
**Brought by Plaintiff James**

</div>

141.    Plaintiff James incorporates by reference all preceding paragraphs as if the

<div align="center">

25

</div>

same were repeated here verbatim.

142.    The conduct of Tim, ratified by Defendant, as alleged above, including, but not limited to, physical assault and battery, constant beratement and ridicule, threats of serious bodily injury and/or death, and offensive and demeaning racial harassment, constitutes extreme and outrageous behavior, exceeding all bounds of a civilized society.

143.    The conduct of Tim, ratified by Defendant, as alleged above, was intended to cause Plaintiff James to suffer severe emotional distress, or was carried out in reckless disregard as to whether it would inflict severe emotional distress upon Plaintiff James, or was certain or substantially certain to result in severe emotional distress on the part of Plaintiff James.

144.    The conduct of Tim, ratified by Defendant, as alleged above, was foreseeable to cause, and did in fact proximately cause, Plaintiff James to suffer from severe emotional distress, mental anguish, humiliation, embarrassment, and pain.  Accordingly, Plaintiff James is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).

145.    These acts were committed by Tim while he served as an employee of Defendant and while acting within the scope of his employment, and Defendant further ratified Tim's behavior by taking no action to prevent it.

## COUNT EIGHT
### Negligent Infliction of Emotional Distress
### North Carolina Common Law
### Brought by Plaintiff James

146.    Plaintiff James incorporates by reference all preceding paragraphs as if the

26

same were repeated here verbatim.

147.    The conduct of Tim, ratified by Defendant, as alleged above, including, but not limited to, physical assault and battery, constant beratement and ridicule, threats of serious bodily injury, and offensive and demeaning racial harassment, constitutes negligent conduct, as Tim was Plaintiff James' manager, and Defendant was aware of the conduct, but failed to take any reasonable preventative or anticipatory action to protect Plaintiff James.

148.    The conduct of Tim, ratified by Defendant, as alleged above, was reasonably foreseeable to cause Plaintiff James to suffer severe emotional distress.

149.    As a proximate result of Defendant's negligence, as alleged above, Plaintiff James suffered from severe emotional distress, mental anguish, humiliation, embarrassment, and pain.    Accordingly, Plaintiff James is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).

150.    These acts were committed by Tim while he served as an employee of Defendant and while acting within the scope of his employment, and Defendant further ratified Tim's behavior by taking no action to prevent it.

151.    Defendant's acts constituted gross negligence and reckless indifference to the rights of Plaintiff James, entitling Plaintiff James to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.

<div align="center">

**COUNT NINE**
**Wrongful Discharge in Violation of North Carolina Public Policy**
**North Carolina Common Law**
**Brought by Plaintiff James**

</div>

152. It is the public policy of the State of North Carolina, as expressed in, *inter alia*, N.C. Gen. Stat. §§ 143-422.2, Article I, Section 1 of the North Carolina Constitution, and ubiquitously throughout the statutes and laws of this State, that employees be free from assault, battery, racial harassment, discrimination, and retaliatory treatment in their employment.

153. The termination of Plaintiff James' employment, resulting from her complaints and suffering related to the acts of racial harassment, assault, and battery, was wrongful as against the public policy of the State of North Carolina.

154. Such termination proximately caused Plaintiff James to suffer emotional distress and other losses, as described above. Accordingly, Plaintiff James is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).

155. Defendant's acts constituted willful, wanton, and malicious conduct, entitling Plaintiff James to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.

## **RELIEF SOUGHT**

WHEREFORE, Named Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

1. Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiff as a representative of all those similarly situated under the FLSA collective action;

28

2.  Issue an Order certifying this action as a class action under the NCWHA, and designate Named Plaintiff as a representative on behalf of all those similarly situated under the NCWHA class;

3.  Award Named Plaintiff and all those similarly situated actual damages for all unpaid and misappropriated wages found due to Named Plaintiff and those similarly situated, and liquidated damages equal in amount, as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a1), and pursuant to the FLSA, 29 U.S.C. § 216(b);

4.  Award Named Plaintiff and all those similarly situated pre- and post-judgment interest at the statutory rate, as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a), and pursuant to the FLSA, 29 U.S.C. § 216(b);

5.  Award Named Plaintiff and all those similarly situated attorneys' fees, costs, and disbursements as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(d), and pursuant to the FLSA, 29 U.S.C. § 216(b); and

6. Award Plaintiff James all back pay, front pay, and past pecuniary losses due as a result of Defendant's unlawful acts;

7. Award Plaintiff James all compensatory damages due as a result of Defendant's unlawful acts;

8. Award Plaintiff James all consequential damages due as a result of Defendant's unlawful acts;

9. Award Plaintiff James punitive damages for Defendant's malicious, reckless, or grossly negligent conduct;

10. Award Plaintiff James all costs incurred in the prosecution of this action, including reasonable attorney's fees;

11. Award Plaintiff James pre-judgment interest; and

12. Award Plaintiff and all those similarly situated further legal equitable relief as this Court deems necessary, just and proper.

<u>**DEMAND FOR TRIAL BY JURY**</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Named Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this, March 4, 2021.

<div style="margin-left:40%">

*/s/ Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Dr., Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com

*/s/ Gregg C. Greenberg, Esq.*
Gregg C. Greenberg, Esq*., pro hac vice*
ZIPIN, AMSTER & GREENBERG, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
(301) 587-9373 (ph)
Email:  GGreenberg@ZAGFirm.com

*Attorneys for Plaintiffs*

</div>

30

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2021, the foregoing **PLAINTIFF'S FIRST AMENDED COMPLAINT** was served in accordance with the Federal Rules of Civil Procedure on the following:

Michael W. Strickland NC Bar# 17101
Post Office Box 30787
Raleigh, North Carolina 27622
Telephone No.: (919) 571-3898
Facsimile No.: (919) 571-1038

Luke Lirot, Esq., *pro hace vice*
Florida Bar Number 714836
LUKE CHARLES LIROT, P.A.
2240 Belleair Road, Suite 190
Clearwater, Florida 33764
Telephone: (727) 536-2100
Facsimile: (727) 536-2110
luke2@lirotlaw.com
*Attorneys for Defendant*

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Robert W.T. Tucci (NCSB No. 55014)
THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC
1020 Southhill Drive, Suite 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
rtucci@gildahernandezlaw.com

*/s/ Gregg C. Greenberg*
Gregg C. Greenberg, (#17291), *pro hac vice*
ZIPIN, AMSTER & GREENBERG, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Telephone: (301) 587-9373
Facsimile: (240) 839-9142
Email: ggreenberg@zagfirm.com
*Attorneys for Plaintiff*